## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.: 1:11-cv-20155-COOKE/TURNOFF

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | ) |
| *ex rel.* **TARONDA WADE, Relator,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| **v.** | ) |
| | ) |
| **DBS INVESTMENTS, LLC, and** | ) |
| **JOHN P. JOSEPH,** | ) |
| | ) |
| **Defendants.** | ) |
| | / |

### PLAINTIFF, THE UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS WITH SUPPORTING MEMORANDUM OF LAW

Plaintiff, the United States of America, through its undersigned Assistant United States

Attorney, pursuant to Rule 56(a) of the Federal Rules of Civil Procedure and Rules 7.1 and 56.1

of the General Rules of the United States District Court for the Southern District of Florida,

moves for summary judgment in its favor and against Defendants DBS Investments, LLC

("DBS") and John P. Joseph ("Joseph") (collectively referred to as "Defendants").[1]

### MEMORANDUM OF LAW

### I.    INTRODUCTION

This False Claims Act case was originally brought on the United States' behalf by

Taronda Wade ("Relator" or "Ms. Wade"), a tenant and participant in the United States

---

[1]    The United States has concurrently filed at E.C.F. 46 and 47, the United States' Statement of Undisputed Material Facts, the Declaration of Relator/Plaintiff, Taronda Wade ("Wade Decl."), the Declaration of Ana M. Ramirez-Mendoza ("Ramirez-Mendoza Decl."), the United States' First Request for Admissions to Defendant DBS Investments, LLC ("DBS RFA") and the United States' First Request for Admissions to Defendant John P. Joseph Admissions ("Joseph RFA").  Pursuant to Rule 36(a)(3), Fed.R.Civ.P., all matters set forth in the DBS-RFA and Joseph-RFA have been deemed admitted as Defendants did not respond to these Admissions requests which were served by mail and email on December 22, 2011.

Department of Housing and Urban Development's ("HUD") Section 8 Tenant-Based Housing Choice Voucher Program ("HCV Program"), then administered by the Miami-Dade Public Housing Agency ("MDPHA").[2]  Between April 30, 2007 and December 2, 2010, Ms. Wade leased Defendants' federally subsidized dwelling unit through the County's HCV Program and for 19 months thereafter was unlawfully required to and did in fact pay excess rents while Defendants were falsely certifying their compliance with the HUD Housing Assistance Payment ("HAP") Contract they entered, as well as, federal requirements that prohibited them from charging excess rents.

Following the United States' intervention (E.C.F. 14) in this case, the United States filed and served its First Amended Complaint in Intervention (E.C.F. 18).  Counts I and II of the United States' First Amended Complaint are brought under the False Claims Act,  asserting in Count I that Defendants violated 31 U.S.C. § 3729(a)(1)(2006) and in Count II that Defendants violated 31 U.S.C. §3729(a)(1)(B) (2009), or alternatively 3729(a)(2)(2006), by making false statements to the County's HCV Program and by engaging in misrepresentations by endorsing 19 HAP Checks, each governed by a HAP Contract and federal regulations that provide that an endorsement constitutes certification of non-receipt of additional rent beyond the amount allowed.  In Counts III and IV, Plaintiffs assert alternative, Payment by Mistake and Unjust Enrichment claims.

---

[2]   Previously known as the Miami-Dade Housing Agency ("MDHA"), MDPHA is now known as the Miami-Dade Public Housing and Community Development ("PHCD"), a department of Miami-Dade County ("County").  PHCD was created in late 2011 through County Mayor Gimenez's reorganization of County government.  *See* Ramirez-Mendoza Decl.; *see also* http://www.miamidade.gov/housing/apply-for-housing.asp.  MDPHA, PHCD, MDHA are collectively referred to as the "County's HCV Program."

## II.   LEGAL STANDARDS

### A.   Section 8, Housing Choice Voucher ("HCV") Program

HUD distributes federal funds for the Section 8 HCV Program pursuant to Section 8 of the United States Housing Act of 1937, as amended.  See 42 U.S.C. § 1437f(o) and 24 C.F.R. part 982.  DBS RFA §I, ¶77; Joseph RFA §I, ¶77.  To assist eligible low income families in obtaining decent, safe, and sanitary housing in the private rental market, the HCV Program provides rental subsidies for units that are chosen by tenants in the private market.  See 24 C.F.R. Part 982.  DBS RFA §I, ¶78; Joseph RFA §I, ¶78.  Public housing agencies ("PHAs") administer the HCV Program locally with funds HUD allocates.  *See* 24 C.F.R. Part 982. DBS RFA §I, ¶79; Joseph RFA §I, ¶79.  The County's HCV Program is the PHA in Miami-Dade County that administered HUD's HCV Program for Ms. Wade's tenancy of Defendants' dwelling unit. Ramirez-Mendoza Decl., ¶¶1, 4. DBS RFA §I, §I, ¶¶1, 10; Joseph RFA §I, ¶¶1, 10.  The County's HCV Program, like other local PHAs, remits rental subsidy payments on behalf of eligible tenants to private unit owners in accordance with HAP Contracts, which are entered between the PHAs and owners on forms HUD specifies.  *See* 24 C.F.R. § 982.162.  DBS RFA §I, ¶80; Joseph RFA §I, ¶80.

The HAP Contract sets forth, among other things, the total amount of the monthly rent that the owner is entitled to receive, the Tenant's share of that rent, and the amount the PHA pays to the owner on the tenant's behalf in monthly assistance with federal funds.  *See* 24 C.F.R. § 982.451. DBS RFA §I, ¶18-19; Joseph RFA §I, ¶18-19.[3]  The term of the HAP Contract is the

---

[3]   The amount the tenant pays to the owner for rent is the "family share" or "tenant portion." *See* 24 C.F.R. § 982.4.  The "Rent to Owner" or "contract rent" is the total monthly rent payable to the owner under the lease for the unit. Rent to owner includes and covers payment for any housing services, maintenance, and utilities that the owner is required to provide and pay for. *See* 24 C.F.R. § 982.4.  The HAP Payment is the amount paid by the PHA to the owner on behalf of the tenant. *See* 24 C.F.R. § 982.4.  The HAP is the difference between the rent to

same as the term of the lease.  *See* 24 C.F.R. §§ 982.309 (b)(1), 982.451(a)(2). DBS RFA §I,

¶95; Joseph RFA §I, ¶95.  The rental amount in the lease must conform to the HAP Contract.  24

C.F.R. § 982.308, which governs the Lease and tenancy provides:

> (g) Changes in lease or rent. (1) . . . .
> (2) In the following cases, tenant based assistance shall not be continued unless
> the PHA has approved a new tenancy in accordance with program
> requirements and has executed a new HAP contract with the owner:
> . . .
> (ii) If there are any changes in lease provisions governing the term of the lease;
> . . .
> (4) The owner must notify the PHA of any changes in the amount of the rent to
> owner at least sixty days before any such changes go into effect, and any such
> changes shall be subject to rent reasonableness requirements (see § 982.503).

24 C.F.R. § 982.308(g).  DBS RFA §I, ¶¶94-98; Joseph RFA §I, ¶¶94-98.  During the initial

term of the lease, the owner may not raise the rent to owner.  24 C.F.R. § 982.309 (a)(3)  DBS

RFA §I, ¶97; Joseph RFA §I, ¶97.  Moreover, the "**owner may not demand or accept any rent**

**payment from the tenant in excess of this maximum, and must immediately return any**

**excess rent payment to the tenant.**"  24 C.F.R, § 982.451 (b)(ii) (emphasis added).  DBS RFA

§I, ¶¶88; Joseph RFA §I, ¶¶88.  During the assisted tenancy, the rent to owner may not exceed

the reasonable rent as most recently determined or redetermined by the PHA.  *See* 24 C.F.R.

§982.507; *see also* 42 U.S.C. § 1437f(o)(10)(A). DBS RFA §I, ¶91; Joseph RFA §I, ¶91.

    An owner's commitment of fraud or violation of any obligation under the HAP Contract

which includes compliance with Section 8 of the 1937 Act (42 U.S.C. 1437f) and the regulations

promulgated thereunder, is actionable. 24 C.F.R. § 982.453.

---

owner and the family share.  *See* 24 C.F.R. §§ 982.4, 982.451.  The Rent to Owner consists of
the family share of the rent plus the HAP.  *See* 24 C.F.R. § 982.451.  The monthly HAP by
the PHA is credited toward the monthly rent to owner under the family's lease.  *See* 24 C.F.R.
§ 982.451(b)(2).

**B.**     **Summary Judgment Standard**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact" and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Moore ex rel. Moore v. Reese*, 637 F.3d 1220, 1231-32 (11th Cir. 2011); *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1263–64 (11th Cir. 2010).  The party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying those "particular parts of materials in the record, . . . which it believes demonstrate the absence of a genuine issue of material fact," (Fed. R. Civ. P. 56(c)(1)(A), (B)), or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

When a party moving for summary judgment points out an absence of evidence on a dispositive issue for which the non-moving party bears the burden of proof at trial, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324–25 (internal quotations and citations omitted).  *See* Fed.R.Civ.P 56(c)(1).  Thereafter, summary judgment is mandated against the non-moving party who fails to make a showing sufficient to establish a genuine issue of fact for trial.  *Id.* at 322, 324–25.  The party opposing a motion for summary judgment must rely on more than conclusory statements or allegations unsupported by facts.  *See* Fed.R.Civ.P 56(c)(1); *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir.1985).

**C.**     **The False Claims Act**

With the May 20, 2009 enactment of the Fraud Enforcement and Recovery Act of 2009 ("FERA"), Public Law 111-21, the False Claims Act ("FCA") currently provides that:

(1)  . . . any person who—

(A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; [or]

(B) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; [or]

. . .

is liable to the United States Government for a civil penalty of not less than $5,[5]00 and not more than $1[1],000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104–410 1), plus 3 times the amount of damages which the Government sustains because of the act of that person."

31 U.S.C. § 3729(a)(1)(A)-(B).[4]  *See* 28 C.F.R. § 85.3(a)(9).

"The phrase 'false or fraudulent claim' in the False Claims Act should be construed broadly."[5]  As used in the FCA, a "claim"

---

[4]   Section 4(f) of FERA provides that FERA's amendments took effect on the date of the May 20, 2009 enactment of the Act and apply to conduct on or after that date, except that—

(1) subparagraph ( B) of section 3729(a)(1) of title 31, United States Code, as added by subsection (a)(1), shall take effect as if enacted on June 7, 2008, and apply to all claims under the False Claims Act (31 U.S.C. 3729 et seq.) that are pending on or after that date . . .

Prior to the enactment of FERA, the FCA provided:

(a) Liability for Certain Acts.--Any person who--

(1) knowingly presents, or causes to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval; [or]

(2) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government; [or] . . . is liable to the United States Government for a civil penalty . . .

31 U.S.C. § 3729(a)(1),(2) (2006).

Both versions of the statute apply here as there were claims before and after FERA's enactment.  *Hopper v. Solvay Pharms. Inc*., 588 F.3d 1318, 1327 (11th Cir. 2009).  As discussed, Defendants are liable under either version.

[5]   *United States ex rel. Sanchez v. Abuabara*, No. 10–61673–CIV-Huck, 2012 WL 254764 at *6 (S.D.Fla. Jan. 27, 2012) (quoting, *Harrison v. Westinghouse Savannah River Co*., 176 F.3d 776, 788 (4th Cir. 1999).)  *See* S.Rep. No. 99-345, at 9 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5274).

> (A) means any request or demand, whether under a contract or otherwise, for
>      money or property and whether or not the United States has title to the
>      money or property, that—
>
>   (i) is presented to an officer, employee, or agent of the United States; *or*
>
>   (ii) is made to a contractor, grantee, or other recipient, if the money or property
>       is to be spent or used on the Government's behalf or to advance a
>       Government program or interest, and if the United States Government—
>
>      (I) provides or has provided any portion of the money or property requested
>          or demanded; or
>
>      (II) will reimburse such contractor, grantee, or other recipient for any portion
>           of the money or property which is requested or demanded; . . .

31 U.S.C. § 3729(b)(2), as amended.

The elements of an FCA claim in HCV cases involving landlords who demand or accept rent payments from tenants in excess of the maximum permitted under a HAP Contract, are: (1) Defendant made a false statement or fraudulent course of conduct; (2) with knowledge, or having acted in deliberate ignorance of the truth or falsity of the information, or, in reckless disregard of the truth or falsity of the information; (3) that was material, and (4) causing the government to pay out money or forfeit moneys due.[6]

### D.   Summary Judgment Should Be Entered in Favor of Plaintiffs on Counts I and II

Under both the current and prior versions of the FCA, Defendants are liable because Defendants knowingly made false statements to the County's HCV Program, and the false statements they made were material in that they influenced the County's HCV Program's decision to pay to Defendant DBS, HAP payments which Defendant Joseph as DBS's agent, presented for payment and deposited on DBS's behalf.

---

[6] *See United States ex rel. Stearns v. Lane*, No. 2:08cv175, 2010 U.S. Dist. LEXIS 96981, at *6 - *8, 2010 WL 3702538 (D. Vt. Sept. 15, 2010)(citing *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1170–71 (9th Cir.2006), *cert. denied*, 550 U.S. 903 (2007)); *United States ex rel. Sutton v. Reynolds*, 564 F. Supp. 2d 1183, 1187 (D. Ore. 2007). *See also United States ex rel. Gatsiopoulos v. Kaplan Career Institute*, No.: 09-21720-CIV-Seitz, 2010 WL 5392668 at *3 (S.D.Fla. Dec. 22, 2010) (citing *Hendow*, 461 F.3d at 1171-73, 1174).

At least four United States District Courts have found in similar circumstances, that where, as here, a landlord of an HCV Program participant, endorses and presents for payment a HAP check, the landlord implicitly certifies that the landlord is not obtaining any rent in addition to that permitted under the HAP Contract, and where the landlord is demanding and receiving excess amounts, such presentment constitutes a false statement under the FCA and the landlord can be held liable. *See e.g.*, *United States ex rel. Smith v. Gilbert Realty Co., Inc.*, No.: 92-CV-40481-FL, 1993 U.S. Dist. LEXIS 21228, *2 - *5 (E.D. Mich. Jul. 27, 1993) (holding Section 8 landlord liable for violations of the False Claims Act where landlord falsely certified that he was not charging Section 8 tenants additional rent); *United States ex rel. Smith v. Gilbert Realty Co.*, Inc., 840 F.Supp. 71 (E.D. Mich. 1993); *Stearns*, 2010 U.S. Dist. LEXIS 96981, at *6 - *8 ("When [the defendant landlord] cashed each check, he implicitly certified that he was not getting any additional payments" and "[b]ecause Lan[dlord] knowingly certified that he was not receiving additional rental money, the statement was material, and this caused the Government to pay out money, the essential elements of FCA liability have been met."); *Sutton*, 564 F. Supp. 2d 1183 (same). *See also Coleman v. Hernandez*, 490 F. Supp. 2d 278, 281 (D. Conn. 2007) (same). Moreover, Judge Graham recently recognized a FCA claim in a substantially similar HCV case filed concurrently with the instant case. *United States ex rel Newberry v. Horton*, Case 1:11-cv-20153-DLG (SD Fla. Feb. 8, 2012) (E.C.F. 47).

## 1. Defendants' False Statements and Fraudulent Course of Conduct

Defendants knowingly made at least 23 false statements to the County's HCV Program, the United States' HCV Program administrator. "So long as the statement in question is knowingly false when made, it matters not whether it is a certification, assertion, statement, or secret handshake; False Claims liability can attach." *Hendow*, 461 F. 3d at 1172.

Any amount Defendants collected from Ms. Wade in excess of the County's HCV Program approved rent and HAP Contract qualifies as fraud and/or abuse under the terms of the HAP Contract and therefore a false statement. *Sutton*, 564 F. Supp. 2d at 1187. The County's HCV Program is consistent with the Housing Choice Voucher Program Guidebook ("Guidebook") published by HUD. Ramirez-Mendoza Decl., ¶27; DBS RFA , §I ¶ 92; Joseph RFA §I ¶92. In that Guidebook, "Fraud" and "abuse" are defined as:

> a single act or pattern of actions made with the intent to deceive or mislead, constituting a false statement, omission, or concealment of a substantive fact. Fraud and abuse result in the payment of housing choice voucher program funds in violation of program requirements.

HUD Housing Choice Voucher Program Guidebook at 22-1.[7] The Guidebook further states:

> A landlord's collection of extra or "side" payments in excess of the family share of rent constitutes "fraud and abuse" under HUD guidelines.

Housing Choice Voucher Program Guidebook at 22-2; -Mendoza Decl., ¶27; DBS RFA , §I ¶ 93; Joseph RFA §I ¶ 93. Moreover,

> The HUD regulations expressly require as a condition of the HAP contract that the owner not demand or accept any additional payment from the tenant. See 24 C.F.R. § 982.451(b)(4)(ii). The Lan[dlord]'s endorsement and presentment of the housing assistance payment checks, while he knowingly received additional payments in excess of the approved amount from [the Public Housing Authority], thus constitutes false claims or representations to the Government.

*Stearns*, 2010 U.S. Dist. LEXIS 96981, at *8.

Here, Defendants knowingly made false statements to the County's HCV Program in the Landlord Certificate of Responsibility, HAP Contract and April 30, 2007 Residential Lease Agreement and Tenancy Addendum that they executed where they stated they would not charge rents over that permitted in the HAP Contract. *See* Responsibility Certification, a true copy of

---

[7]   The Housing Choice Voucher Program Guidebook is available at http://portal.hud.gov/hudportal/documents/huddoc?id=DOC_11766.pdf. An excerpt of the Guidebook is attached to the Ramirez-Mendoza Decl. as Exhibit "B."

which is filed at E.C.F. 18-1; HAP Contract, a true copy of which is filed at E.C.F. 18-3. DBS RFA §I, ¶¶ 13, 14, 17-24, §II, ¶¶ 1, 3; Joseph RFA §I, ¶¶ 13, 14, 17-24, §II, ¶¶ 1, 3; Ramirez Decl., ¶¶5, 7 - 15. After Defendants certified that they would comply with the HAP Contract and would not demand or accept from Ms. Wade any rent above that authorized by the County's HCV Program, without authorization or approval, Defendants demanded from Ms. Wade $1,650 monthly rent instead of the $1,361.00 approved by the County's HCV Program. Defendants failed to provide the County's HCV Program or HUD with any notice that they would charge, did charge and accept from Ms. Wade any sums over that permitted in the HAP Contract and April 30, 2007 Residential Lease Agreement and Tenancy Addendum approved by the County's HCV Program. Further, without the knowledge or approval of the County's HCV Program, Defendants had Ms. Wade execute a separate alternate lease for a higher monthly rent than permitted by the County's HCV Program or HUD.  Ramirez-Mendoza Decl., ¶¶19 – 21; DBS RFA, §I ¶¶27-37, 60-67, §II, ¶12; Joseph RFA §I ¶¶27-37, 60-67, §II, ¶12; Wade Decl., ¶¶10-13, 18, 27-28.

Defendants made additional false statements to the County's HCV Program when they endorsed and presented for payment, 19 federally subsidized HAP checks that DBS received from the County's HCV Program while knowingly charging and collecting from Ms. Wade excess rents. DBS RFA , §I ¶¶47, 48, 60-66; Joseph RFA §I ¶¶47, 48, 60-66; Wade Decl., ¶¶10-13, 18, –27-28. In depositing and endorsing each of the above-referenced HAP checks for deposit into DBS's bank account, Defendants demanded and claimed payment thereof from the County's HCV Program. DBS  RFA, §I ¶¶68-70; Joseph RFA §I ¶¶68-70; Ramirez Decl., ¶¶26-30. Each of Defendants' act of endorsing and negotiating HAP checks for deposit into DBS's bank account, carried with it, among other things, Defendants' certifications pursuant to the HAP

Contract and HUD Tenancy Addendum.  24 C.F.R. §§ 982.308, 982.309 and 982.451(b)(3),(4).

DBS RFA , §I ¶ 70; Joseph RFA §I ¶70; Ramirez Decl., ¶¶26-30.  *See Smith*, 840 F.Supp. at 72

("Defendant violated the F[CA] 58 times: by making 7 statements to the local housing authority,

and by endorsing 51 rent checks, each governed by a contract that stated an endorsement

constitutes certification of non-receipt of additional rent beyond the amount allowed.").

## 2.   **Defendants' Knowledge**

The FCA defines the terms "knowing" and "knowingly" as meaning "(A) . . . that a

person, with respect to information—(i) has actual knowledge of the information; (ii) acts in

deliberate ignorance of the truth or falsity of the information; or (iii) acts in reckless disregard of

the truth or falsity of the information; and (B) require no proof of specific intent to defraud." 31

U.S.C. § 3729(b)(1).  *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1309 n.

12 (11th Cir.), *cert. denied*, 537 U.S. 1105 (2002).

Defendant Joseph initialed each paragraph of the Landlord Certification of Responsibility

(DBS RFA §I, ¶¶ 13, 14, 17–19, 24, §II, ¶¶ 1, 3; Joseph RFA §I, ¶¶ 13, 14, 17–19, 24, §II, ¶¶ 1,

3; Ramirez Decl., ¶¶5, 7–15), stating that he knew that the landlord had to comply with the HAP

Contract, Tenancy Addendum, could not charge Ms. Wade more rent, and had been briefed on

the HCV Program.  *See* Responsibility Certification (E.C.F. 18-1); HAP Contract(E.C.F. 18-3).

DBS RFA §I, ¶¶ 13, 14, 17 – 19, 24, §II, ¶¶ 1, 3; Joseph RFA §I, ¶¶ 13, 14, 17 – 19, 24, §II, ¶¶ 1,

3; Ramirez Decl., ¶¶5, 7 - 15.  On April 30, 2007, Defendants executed the HAP Contract and

April 30, 2007 Residential Lease agreement incorporating the Tenancy Addendum which was

attached thereto.  The HAP Contract and Residential Lease and Tenancy Addendum clearly

limited the Total Contract Rent to $1,361.00.  The HAP Contract further indicated, the County's

HCV Program would pay a HAP Payment of $1,051.00 per month and that these payments were

conditioned upon the Landlord's certification and agreement that the Landlord would neither charge nor accept from Ms. Wade more than $346.00 rent per month – the difference between the HAP Payment and Total Contract Rent.  HAP Contract (E.C.F. 18-3); April 30, 2007 Residential Lease (DE 18-4);  DBS RFA , §I ¶¶ 17 - 22, §II, ¶¶ 3-4; Joseph RFA §I ¶¶ 17 - 22, §II, ¶¶ 3-  4; Ramirez Decl., ¶¶7 - 15.

Defendants received the County's HCV Program's April 30, 2007 Move-In Authorization which again made clear that the total contract rent was $1,361.00 of which the County's HCV Program would pay $1,015.00 and that Ms. Wade was responsible for the $346.00 per month balance.  April 30, 2007 Move In Authorization (E.C.F. 18-5).  DBS RFA , §I ¶¶25-26, §II, ¶5; Joseph RFA §I ¶¶25-26, §II, ¶5; Ramirez Decl., ¶16; Wade Decl.¶9. Defendants also received the April 15, 2009 Rent Change Notice Owner (DE 18-9) from the County's HCV Program which notified DBS that effective April 1, 2009, of the $1,361.00 monthly rent, the HAP Contract and Lease were amended in that Tenant's share of the Contract Rent would be $290.00 and the County HCV Program's HAP Payment would be $1,071.00. DBS RFA , §I ¶¶45-46, §II, ¶¶9, 10; Joseph RFA §I ¶¶45-46, §II, ¶¶9, 10; Ramirez Decl., ¶17; Wade Decl., ¶17.[8]

Only after Defendants' execution of the Landlord's Certification of Responsibility on February 19, 2007 (which states that it was illegal for the Landlord to charge additional rent) and receipt of the County HCV Program's March 5, 2007 RFTA, did Defendants, *without* HUD's or

---

[8]   Defendants also received the February 8, 2010 Notification of HAP/Lease Change (ECF 18-11) from the County's HCV Program providing notification that effective April 1, 2010, the HAP Contract was amended and that the Contract monthly rent was $1,361.00 of which the County's HCV Program would pay the entire amount and that Ms. Wade was to pay nothing toward her rent and the contract expired on April 1, 2011.  February 8, 2010 Notification of HAP/Lease Change, a true copy of which is filed at DE 18-11.  DBS RFA , §I ¶50, §II, ¶11; Joseph RFA §I ¶50, §II, ¶11; Wade Decl., ¶20; ; Ramirez Decl., ¶18.  However, by the time that Notification arrived, Ms. Wade refused to pay any rent above the HAP Contract.

the County's HCV Program's knowledge or approval, illegally require Ms. Wade to sign the

Alternative Lease.  That document stated that for a rental term of March 15, 2007 through March

15, 2008, the total monthly rent beginning on April 15, 2007 was $1,650.00 and the security

deposit was an excessive $3,300.00.  Only after Defendants' April 30, 2007 execution of the

HAP Contract (E.C.F. 18-3), the County HCV Program's approved April 30, 2007 Residential

Lease and Tenancy Addendum (ECF 18-4), and receipt of the County's HCV Program's April

30, 2007 Move-In Authorization (ECF 18-5),[9] did Defendants DBS and Joseph, in total violation

of the terms of the HAP Contract and April 30, 2007 Residential Lease and Tenancy Addendum,

and *without* HUD's or the County's HCV Program's knowledge or approval, illegally require

Ms. Wade to pay a monthly rental of $635.00 a month for rent commencing April, 2007 instead

of the $346.00 a month set forth in the HAP Contract and April 30, 2007 Move-In Authorization.

     In accordance with Defendant Joseph's demands on behalf of DBS and/or Cantave, Ms.

Wade paid an excess of $99.00 to $389.00 a month from May 2007 through May 2008.  DBS

RFA , §I ¶¶ 36-38, §II, ¶ 6; Joseph RFA §I ¶¶ 37-38, §II, ¶ 6; Wade Decl., ¶¶10-13.  Then, even

after the County's HCV Program notified DBS and Ms. Wade on or about April 15, 2009 that

Ms. Wade's share of the $1,361.00 a month rent was reduced to $290.00 a month and the

County's HCV Program's HAP Payments would be $1,071.00 a month,[10] Defendants DBS and

Joseph, *without* HUD's or the County's HCV Program's knowledge or approval, illegally

required Ms. Wade to pay an additional $200.00 a month in total violation of the terms of the

HAP Contract, April 30, 2007 Residential Lease and Tenancy Addendum and April 15, 2009

---

[9]  DBS RFA , §I ¶¶17-26, §II, ¶¶3-5; Joseph RFA §I ¶¶17-26, §II, ¶¶3-5; Ramirez Decl., ¶¶7-16; Wade Decl.¶¶7-9.

[10]  April 15, 2009 Rent Change Notice Owner and April 15, 2009 Rent Change Notice Tenant, true copies of which are filed at DE 18-9 and DE 18-10.  DBS RFA , §I ¶¶45-46, §II, ¶¶9, 10; Joseph RFA §I ¶¶45-46, §II, ¶¶9, 10; Ramirez Decl., ¶17; Wade Decl., ¶17.

Rent Change Notice Owner.  DBS RFA, §I ¶47; Joseph RFA, §I ¶47; Wade Decl., ¶18.  From

June 2009 to December 2009, pursuant to Joseph's demands, Ms. Wade paid her $290.00 portion

of the rent as approved by County's HCV Program plus additional amounts pursuant to Joseph's

demands.  DBS RFA, §I ¶48; Joseph RFA, §I ¶48; Wade Decl., ¶18.

Defendants knowingly unlawfully demanded and accepted <u>excessive</u> rent from Ms. Wade

in the amount of $4,398.00 in violation of the HAP Contract, the County HCV Program's

approved April 30, 2007 Residential Lease and Tenancy Addendum, the April 30, 2007 Move-In

Authorization, and April 15, 2009 Rent Change Notice Owner, while endorsing and presenting

for payment 19 HAP Payments totaling $19,733.00,[11] that conditioned payment on Defendants'

agreement not to charge Ms. Wade excess rent.  DBS RFA, §I ¶¶71, 73, 76; Joseph RFA §I

¶¶71, 73, 76; Wade Decl., ¶13, 18.

Defendants knew of the rent limitation and simply chose to violate it and charge excess

rent and not submit the Alternative Lease to the County's HCV Program.  Indeed, when Ms.

Wade refused or couldn't make the illegal excessive rents which Defendant Joseph himself

described as a requirement to "pay [him] on the side," Defendants threatened Ms. Wade with

eviction.  *See* Wade Decl., ¶¶ 15, 16, 19; Three Day Eviction Notice, ECF 18-8 and Exhibit "A"

to Wade Decl.  As the District of Oregon held in similar circumstances:

> There is no doubt that the Contract limited the rent Defendant could collect from
> Plaintiffs, that Defendant knew of the limitation, and that Defendant was obligated to
> advise HAP if he collected additional rents from Plaintiffs.  Under this scenario,
> Defendants' failure to advise HAP that he was collecting additional rents could be

---

[11] From May 1, 2007 through November 1, 2010, the County's HCV Program's made 42 HAP
Payments to DBS for the County's HCV Program's share of the Ms. Wade's $1,361.00
monthly rental of the Premises, which DBS accepted and deposited to its account, were in the
total amount of $47,085.00.  DBS RFA, §I ¶¶57, 68-69; Joseph RFA §I ¶¶57, 68-69; Ramirez
Decl., ¶25.  Of those, 19 HAP Payments totaling $19,733.00 were paid during those months
Ms. Wade acceded to Defendants' demands that she pay excessive rents.  DBS RFA, §I ¶¶71,
73, 76; Joseph RFA §I ¶¶71, 73, 76; Wade Decl., ¶13, 18; Ramirez Decl., ¶25.

considered a misrepresentation by omission and could constitute a knowing and intentional fraud on the government.

*Sutton*, 564 F. Supp. 2d at 1188.  Likewise the court in *Smith* granted summary judgment in favor of an HCV Tenant/Relator where the Section 8 landlord defendant claimed he occasionally "signed standard form government agency contracts without carefully reading them."  The Court held that the defendant landlord's conduct constituted "reckless disregard" and found that he "signed the certifications with 'knowledge' that they were false."  *Smith*, 1993 U.S. Dist. LEXIS 21228 at *5 (granting summary judgment as to liability) (record citations omitted); *Smith*, 840 F. Supp. at 72; *Stearns*, 2010 U.S. Dist. LEXIS 96981, at *7-*8.

### 3.      **"That was Material"**

The term "material" as used in the FCA means "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."  31 U.S.C. § 3729(b)(4).  Defendants' agreement to accept from Ms. Wade only that rent permitted under the HAP Contract and County's HCV Program's approved April 30, 2007 Residential Lease and not demand excessive rent, was material to the County's HCV Program's decision to make or continue the HAP subsidy payments to Defendants.  Ramirez-Mendoza Decl., ¶¶19-21, 26-30. As discussed above, it is undisputed that Defendants' representations were false.

The HAP Contract, Tenancy Addendum, and federal regulations made clear that HAP Payments were conditioned on Defendants not charging Ms. Wade excess rent.[12]  Clearly, the amount of rent Defendants intended to and did collect from Ms. Wade was relevant to the County's HCV Program's decision to enter into the HAP Contract with Defendant.  Ramirez-Mendoza Decl., ¶¶19-21, 26-30.  *Cf. Sutton*, 564 F. Supp. 2d at 1188.  Once the County's HCV

---

[12]  Ramirez-Mendoza Decl., ¶¶ 19-21, 26-30; HAP Contract (ECF 18-3), Part A, ¶¶ 6, 7; HAP Contract, Part B, ¶¶1, 2, 6, 7, 8; HAP Contract, Part C - Tenancy Addendum, ¶¶2, 4, 5, 15 (ECF 18-4); 24 C.F.R. §§ 982.308 (g)(2), 982.451.

Program set the monthly Contract rent at $1,361.00 and $1,500.00 Security Deposit, and established the County's HCV Program's and Ms. Wade's share of the monthly rent, the HAP Contract and April 30, 2007 Residential Lease approved by the County's HCV Program prohibited Defendants from collecting more rent. *Id.*

Each of Defendants' acts of endorsing and negotiating 19 HAP checks for deposit into Defendants' bank account, carried with it, among other things, Defendants' certifications pursuant to the HAP Contract and the HUD Tenancy Addendum and 24 C.F.R. §§ 982.308, 982.309 and 982.451(b)(3),(4).  DBS RFA , §I ¶ 70; Joseph RFA §I ¶70; Ramirez Decl., ¶¶25-30.  Accordingly, Defendants' negotiating the HAP Payments while collecting from Ms. Wade more than permitted, affected one of the most basic terms of the HAP Contract and was relevant to the County's HCV Program's decision to continue to pay the subsidy every month.  Ramirez-Mendoza Decl., ¶¶28, 30; DBS RFA, §I ¶¶73, 76; Joseph RFA §I ¶¶73, 76.  *Cf. Sutton*, 564 F. Supp. 2d at 1188.  The County's HCV Program's Internal Auditor states in her declaration that "[h]ad the County's HCV Program known that DBS, Joseph, or any of DBS's agents, affiliates, or associates was collecting more than the HAP Contract permitted from Ms. Wade, the County's HCV Program would have ceased making monthly payments to DBS."  Ramirez-Mendoza Decl., ¶30.

### 4. "Causing the Government to Pay Out Money or Forfeit Moneys Due"

The clear language of the HAP Contract, Tenancy Addendum, and applicable federal regulations incorporated therein, state that the funding of the HAP Payment subsidy was contingent upon Defendants collecting no more rent or other sums than permitted by the HAP Contract and adjustments permitted by the County's HCV Program from Ms. Wade.  Ramirez-Mendoza Decl., ¶¶ 19-21, 26-30; HAP Contract (ECF 18-3), Part A, ¶¶ 6, 7; HAP Contract,

Part B, ¶¶1, 2, 6, 7, 8; HAP Contract, Part C - Tenancy Addendum, ¶¶2, 4, 5, 15 (ECF 18-4);

24 C.F.R. §§ 982.308 (g)(2), 982.451. As the District Court of Oregon noted in *Sutton*,

> Once Defendant began collecting additional payments from Plaintiffs, [the PHA]'s obligation under the Contract could have been decreased, or even eliminated. Consequently, Defendants' failure to inform HAP that he was collecting the additional sums from Plaintiffs caused the government to pay moneys that it was no longer obligated to pay. . . . [T]he court finds that Plaintiffs have adequately supported their claim for violation of the Act.

*Sutton*, 564 F. Supp. 2d at 1189. *See also Stearns*, 2010 U.S. Dist. LEXIS 96981, at *8

("Because [the] Lan[dlord] knowingly certified that he was not receiving additional rental

money, the statement was material, and this caused the Government to pay out money, the

essential elements of FCA liability have been met.")

Defendants knowingly certified that they were not receiving additional rental money, the

statements were material, and this caused the Government to pay out $19,733.00 to Defendant

DBS in the form of 19 checks while Defendants, without the knowledge or approval of the

County's HCV Program or HUD, were demanding and receiving $4,398.00 in excess rents,

which Defendant Joseph endorsed and presented for payment on behalf of DBS.  Accordingly,

the essential elements of FCA liability have been met and Defendant should be held liable for

violations of the FCA.

### E.      Summary Judgment on Counts III and IV

The Government is also entitled to summary judgment on its alternative payment by

mistake and unjust enrichment claims.  Under Florida law, the elements of a cause of action for

unjust enrichment and payment by mistake are:

> (1) plaintiff conferred a benefit upon the defendant, who has knowledge of that benefit; (2) defendant accepts and retains the conferred benefit; and (3) under the

circumstances, it would be inequitable for the defendant to retain the benefit without paying for it.[13]

There is no dispute in this case that the Government conferred a benefit upon Defendants by permitting them to participate in the HCV Program and by paying HAP Payments of $19,733.00, upon Defendants' assurances they would comply with the HAP Contract and not seek monies from Ms. Wade in excess of that permitted, and that Ms. Wade conferred a benefit upon Defendants by paying to Defendants upon Defendant Joseph's demands, $4,398.00 more than she was lawfully required to pay[14] and that Defendants had knowledge they were charging and accepting from Ms. Wade more than permitted under the HAP Contract and April 30, 2007 Residential Lease approved by the County's HCV Program.  Moreover, there is no dispute that Defendants accepted and retained the extra sums he received from Ms. Wade.  Under the circumstances, as explained in the Section on the False Claim Act above, it would be inequitable for Defendants to retain the additional $4,398.00 that Ms. Wade paid.

III. **Damages and Civil Penalties**

A person who violates the False Claims Act "is liable for a civil penalty of not less than $5,[5]00 and not more than $1[1],000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104–410 1), plus 3 times the amount

---

[13]  *State Farm Mut. Auto. Ins. Co. v. Kugler*, No.: 11-8005120-Hurley, 11 WL 4389915 at *3–*4 (S.D.Fla. September 21, 2011) (citation omitted).  *See also Baptista v. JP Morgan Chase Bank*, 640 F.3d 1194, 1198 n.3 (11th Cir.2011); *United States v. Aggarwal*, No. 6:03–cv–117–Orl–31KRS, 2004 WL 5509107 at *5 (M.D. Fla. Nov. 8, 2004).

[14]  The Alternative Lease agreement Defendants required Ms. Wade to sign was illegal because it was never presented to or approved by the County's HCV Program as required by the HAP Contract and Tenancy Addendum and federal regulation.  24 C.F.R. § 982.308(f); HAP Contract, Part B, ¶¶1, 2, 6, 7, 8; HAP Contract, Part C - Tenancy Addendum, ¶¶2, 4, 5, 14 and 15.  In violation of regulations, it also lacked a tenancy addendum.

of damages which the Government sustains because of the act of that person."  31 U.S.C. §

3729(a).  *See* 28 C.F.R. § 85.3(a)(9).[15]

> Each violation of the FCA gives rise to separate liability. *See, e.g., United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1157 (2d Cir. 1993) (holding that the number of FCA claims equals the number of fraudulent acts committed by the defendant)[, *cert. denied*, 508 U.S. 973 (1993)]; *Coleman v. Hernandez*, 490 F. Supp. 2d 278, 281 (D. Conn. 2007) ("Liability attaches for each false claim submitted."). [The Landlord] is therefore liable on each of the twelve [HAP] checks he endorsed.

*United States ex rel. Stearns*, 2010 U.S. Dist. LEXIS 96981, at *9.

Courts in FCA cases involving overcharge of HCV tenants hold that the proper measure

of damages is "the 'amount that [the government] paid out by reason of the false statements over

and above what it would have paid  if the claims had been truthful.'" *Stearns*, *supra*, at *9

quoting, *Coleman*, *supra*. at 281.[16]  Following the logic of *Coleman*, here, the Government

sustained damages of $4,398.00 (the amount the Government paid out over and what it would

have paid had if Defendants' claims had been truthful), which, when trebled, totals $13,194.00.

The Government also is entitled to a civil penalty of a minimum of between $5,500.00 to

a maximum of $11,000.00 for Defendants' 23 false claims in failing to: (a) submit the

Alternative Lease to the County's HCV Program for approval; (b) request or obtain approval of a

modification of the Total Rent; (c) request or obtain approval to charge and collect from the

Tenant amounts over the County HCV Program's determination of Tenant's Share and (d)

---

[15] Where the Government intervenes, the Relator is entitled to receive at least 15 percent but not more than 25 percent of the proceeds of the action, depending upon the extent to which the person substantially contributed to the prosecution of the action.  The Relator is also entitled to receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.  31 U.S.C. §3730 (d)(1).

[16] The Government has taken the position in several HCV Program FCA cases, that its baseline measure of damages is the amount of the HAP Payments made to the Defendant.  While not waiving the approach, the Government proceeds under the *Coleman* court's methodology.

Defendants' misrepresentations in the Landlord's Responsibility Certification as well as 19

additional violations relating to the endorsement of HAP checks.  31 U.S.C. § 3729(a).  *See* 28

C.F.R. § 85.3(a)(9); *Coleman, supra* at 282-83.[17]  The Government could in this case therefore

seek up to $253,000.00 in fines (23 x $11,000).  In FCA cases involving HCV participants who

have been overcharged, courts have imposed penalties of $5,500.00 for each violation.  *See e.g.*

*Coleman, supra*.  Given the amount of damages at issue, the Government seeks only the

assessment of penalties in the amount of $22,000.00 for four of the 23 separate false claims (4 x

$5,500 = $22,000).[18]  Thus the Government is entitled to an award of damages in the amount of

$13,194.00 and penalties of $22,000 in the total amount of $35,194.00, plus the costs of this

action (31 U.S.C. §3729(a)(3)) and interest pursuant to the FCA.

WHEREFORE, the United States of America respectfully requests that final summary

judgment be entered in its favor in the amount of $35,194.00, plus the costs of this action and

interest.

Dated:  April 26, 2012

**WIFREDO A. FERRER**
**UNITED STATES ATTORNEY**

By: **s/ James A. Weinkle**

JAMES A. WEINKLE
Assistant United States Attorney
Florida Bar No. 0710891
99 N.E. 4th Street, Suite 300
Miami, Florida 33132
Tel.: 305.961.9290/Fax: 305.530-7139
Email: James.Weinkle@usdoj.gov

*Counsel for United States of America*

---

[17]  In *Coleman*, the court held that "a penalty of $ 5,500 for each of the six violations is sufficient
to accomplish the purposes of the False Claims Act - that is to make the government whole
and to deter future false claims." *Coleman,* 470 F. Supp. at 283.

[18]  This proposed penalty is reasonable and constitutional.  *Coleman,* 470 F. Supp. at 283; *United*
*States ex rel Smith*, 840 F.Supp. at 75.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 26, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:  <u>s/ James A. Weinkle</u>

## <u>SERVICE LIST</u>

*U.S. ex rel Wade v. DBS Investments, LLC and John P. Joseph,*
**CASE NO.: 1:11-cv-20155-COOKE/TURNOFF**
**United States District Court Southern District of Florida**

| | |
|---|---|
| **James A. Weinkle**<br>**Assistant United States Attorney**<br>**Office of the United States Attorney**<br>**Southern District of Florida**<br>James L. King Federal Justice Building<br>99 N.E. 4th Street, Suite 300<br>Miami, FL  33132<br><br>Email: James.Weinkle@usdoj.gov<br>Tel: 305.961.9290<br>Fax: 305.530.7139<br><br>**Counsel for the United States**<br><br>*via Notice of Electronic Filing generated by*<br>*CM/ECF* | **Jeffrey M. Hearne, Esq.**<br>**Senior Attorney**<br>**Sean Rowley, Esq.**<br>**Staff Attorney**<br>**Legal Services of Greater Miami Inc.**<br>3000 Biscayne Blvd., Suite 500<br>Miami, FL 33137<br><br>305.438.2403 (J. Hearne – phone)<br>305.438.2415 (S. Rowley – phone)<br>305.573.5800 (fax)<br><br>Email: JHearne@lsgmi.org<br>Email: SRowley@lsgmi.org<br><br>Counsel for Relator |
| **Andell K. Brown, P.L.**<br>12550 Biscayne Boulevard<br>Suite 800<br>Miami, Florida 33311<br><br>305.938.8385 (office)<br>305.938.8386 (fax)<br>**Email:** andellbrown@gmail.com<br><br>**Counsel for Defendants**<br>*via Notice of Electronic Filing generated by CM/ECF* | |