UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-cv-20155-COOKE/TURNOFF

UNITED STATES OF AMERICA,
*ex. rel.* TARONDA WADE, Relator,

      Plaintiffs,

vs.

DBS INVESTMENTS, LLC, and
JOHN P. JOSEPH,

      Defendants.

_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

THIS MATTER is before me on Plaintiff, the United States of America's ("United States"), Motion for Summary Judgment ("Motion") (ECF No. 48).  This action, governed by the False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA")[1], was originally brought by Relator, Taronda Wade ("Ms. Wade"), on Plaintiff's behalf against DBS Investments, LLC ("DBS Investments") and John P. Joseph ("Joseph"), individually.   Ms. Wade was a tenant of Defendants, DBS Investments and Joseph (collectively "Defendants"), and a participant in the United States Department of Housing and Urban Development's ("HUD") Section 8 Tenant-Based Housing Choice Voucher Program ("HCV Program"), formerly administered by the Miami-Dade Public Housing Agency ("MDPHA").   Wade Decl. ¶¶ 3, 5-6.

Upon the filing of this suit, pursuant to 31 U.S.C. § 3730(b)(2) and (4), the United States intervened and served its First Amended Complaint, pleadings Counts I and II under the FCA, as

---

[1] The FCA provides that "any person who knowingly presents… a false or fraudulent claim for payment or approval; or knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim is liable to the United States Government."  31 U.S.C. § 3729(a)(1)(A)-(B).

well as Counts III and IV for mistake and unjust enrichment (ECF No. 18).  Plaintiff now seeks

summary judgment, asserting that there is no dispute of a genuine issue of material fact on

claims under the FCA as well as its claims for mistake and unjust enrichment.[2]  Defendants have

not opposed Plaintiff's Motion, and the time to do so has expired.

## I.    FACTUAL BACKGROUND

On April 30, 2007, Ms. Wade began leasing Defendant DBS Investments' federally

subsidized dwelling unit through the County's HCV Program.  Wade Decl. ¶ 7.   In the Landlord

Certificate of Responsibility, HUD Housing Assistance Payment Contract ("HAP Contract"),

and April 30, 2007 Residential Lease Agreement and Tenancy Addendum, Defendants DBS

Investments and John P. Joseph, DBS' agent, stated that they would not charge rents more than

the amount permitted in the HAP Contract.[3]  *See* Landlord Responsibility Certification, ECF No.

---

[2] In her Notice of Joining and Adopting the Plaintiff's current Motion, Ms. Wade requested that she receive attorneys' fees and costs on the FCA claim, should Plaintiff win on its Motion.  "The relator receives a share of any proceeds from the action—generally ranging from 15 to 25 percent if the Government intervenes (depending upon the relator's contribution to the prosecution), and from 25 to 30 percent if it does not (depending upon the court's assessment of what is reasonable)—*plus attorney's fees and costs*."  *Vermont Agency of Natural Resources v. U.S.*, 529 U.S. 765, 769-70 (2000)(citing §§ 3730(d)(1)-(2)) (Emphasis added).  *See also Cook County, Ill. v. U.S.*, 538 U.S. 119, 123 (2003).  Based on the cited case law, Ms. Wade will be awarded reasonable attorneys' fees and costs on the FCA claim.

[3] The HAP Contract contains the same terms as the lease and sets forth the total amount of the monthly rent that the owner is entitled to receive, the Tenant's share of that rent, and the amount the Public Housing Agency ("PHA") pays to the owner on the tenant's behalf in monthly assistance with federal funds. *See* 24 C.F.R. § 982.451. DBS RFA §I, ¶18-19; Joseph RFA §I, ¶18-19.  In the instant case, the County's HCV Program is its Public Housing Agency.

18-1; HAP Contract, ECF No. 18-3; DBS RFA §I ¶¶ 13, 14, 17-24, §II ¶¶ 1, 3[4]; Joseph RFA §I ¶¶ 13, 14, 17-24, §II ¶¶ 1, 3[5]; Ramirez-Mendoza Decl. ¶¶5, 7-15.

Nevertheless, Defendants obtained a total monthly payment of $1,650 from the rental to Ms. Wade, instead of a total monthly payment of $1,361 – the original amount approved by the County's HCV Program.  Wade Decl., ¶¶ 10-11.  To achieve the $1,361 contract rent payment, the HCV Program would pay $1,015, leaving the $346 balance to be covered by Ms. Wade.  *See* HAP Contract, ECF No. 18-3; Residential Lease, Apr. 30, 2007, ECF No. 18-4; Ramirez-Mendoza Decl. ¶ 9.  Thus, pursuant to the HAP Contract, Defendants were forbidden from charging and accepting from Ms. Wade in excess of $346.00, which is the difference between the HAP Payment and the Total Contract Rent.  *See* HAP Contract; Residential Lease, Apr. 30, 2007; DBS RFA §I, ¶¶ 17-22, §II ¶¶ 3-4; Joseph RFA §I ¶¶ 17-22, §II ¶¶ 3-4; Ramirez-Mendoza Decl. ¶¶ 11-12, 14-15.  Defendants did not notify the County's HCV Program or HUD that they began charging Ms. Wade more than the initially permitted amount.[6]  *See* DBS RFA §I ¶¶ 36-38, §II ¶ 6; Joseph RFA §I ¶¶ 37-38, §II ¶ 6, 3.  Instead of $346.00, Defendants began collecting $635 per month from Ms. Wade.  Wade Decl. ¶ 11; DBS RFA §I, ¶¶ 37-38, §II ¶¶ 6,3;  Joseph RFA §I ¶¶ 37-38, §II ¶¶ 6, 3.  Furthermore, Defendants had Ms. Wade execute a separate alternate lease for a higher monthly rent than that permitted.  Ramirez-Mendoza Decl., ¶¶19 –

---

[4] The matters within the United States' First Requests for Admissions to DBS Investments have been admitted because DBS Investments failed to serve a written answer or objection thereto within 30 days of being properly served with the United States' First Requests for Admissions on December 22, 2011.  *See* Fed. R. Civ. P. 36(a)(3).

[5] The matters within the United States' First Requests for Admissions to John P. Joseph have been admitted because John P. Joseph failed to serve a written answer or objection thereto within 30 days of being properly served with the United States' First Requests for Admissions on December 22, 2011.  *See* Fed. R. Civ. P. 36(a)(3).

[6] HUD distributes federal funds for the Section 8 HCV Program pursuant to Section 8 of the United States Housing Act of 1937, as amended. See 42 U.S.C. § 1437f(o) and 24 C.F.R. part 982. DBS RFA §I, ¶77; Joseph RFA §I, ¶77.  The HCV Program provides rental subsidies for units that are chosen by tenants in the private market. See 24 C.F.R. Part 982.  DBS RFA §I, ¶78; Joseph RFA §I, ¶78.

21; DBS RFA, §I ¶¶ 27-37, 60-67, §II, ¶12; Joseph RFA §I ¶¶ 27-37, 60-67, §II, ¶ 12; Wade Decl., ¶¶ 10-13, 18, 27-28.

During April 2009, Ms. Wade's official tenant's share under the HCV Program declined. An April 15, 2009 Rent Change Notice to Owner was sent from the HCV Program to the Defendants informing Defendants that effective April 1, 2009, the $1,361 contracted rental payment would consist of monthly payments of $1,071 from the HCV Program and $290 from Ms. Wade.  DBS RFA, §I ¶¶ 45-46, 60-67, §II, ¶ 9; Joseph RFA §I ¶¶ 45-46, §II, ¶ 9, 10; Ramirez-Mendoza Decl. ¶ 17; Wade Decl. ¶ 17.  Nevertheless, and without HUD's or the HCV Program's approval, Defendants impermissibly required Ms. Wade to pay an additional $200 per month.  DBS RFA, §I ¶ 47; Joseph RFA §I ¶ 47; Wade Decl. ¶ 18.  Also, from June 2009 until December 2009, Ms. Wade tendered her $290 portion of the rent as well as additional amounts according to Joseph's illegal demands.

Notwithstanding receiving additional rental payments totaling $4,398 from Ms. Wade, Defendants presented for payment 19 federally subsidized HAP checks totaling $19,733 for deposit into DBS Investment's bank account, thereby claiming payment from the County's HCV Program.[7]  DBS RFA, §I ¶¶ 68-70; Joseph RFA §I ¶¶ 68-70; Ramirez Decl. ¶¶ 26- 30; Wade Decl. ¶¶ 13, 18.  While a participant in the HCV Program, Defendants made at least 23 material false statements or omissions to the County's HCV Program, including failing to submit the alternative lease to the County's HCV Program for approval, failing to obtain approval for the modification of the total rent, failing to obtain approval to charge and collect rental payments

---

[7] From May 1, 2007 through November 1, 2010, the HCV Program made 42 HAP payments totaling $47,085 to DBS Investments as the HCV Program's share of Ms. Wade's $1,361 total rent, which were accepted and deposited into DBS Investment's account.  DBS RFA, §I ¶¶ 57, 68-69; Joseph RFA §I ¶¶ 57, 68-69; Ramirez Decl. ¶ 25.  From the 42 payments, the 19 payments referenced above were paid during those months in which Ms. Wade, pursuant to Joseph's demands, made excessive rental payments. DBS RFA, §I ¶¶ 71, 73, 76; Joseph RFA §I ¶¶ 71, 73, 76; Ramirez Decl. ¶ 25; Wade Decl. ¶ 13.

from Ms. Wade above the amount of the HCV Program's determination of the tenant's share, making misrepresentations in the Landlord Responsibility Certification, and the 19 endorsements of HAP checks.

## II.     LEGAL STANDARD

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56(c)).  The moving party bears the initial burden of informing the court of the basis for its motion, and identifying those "particular parts of materials in the record, . . . which it believes demonstrate the absence of a genuine issue of material fact," (Fed. R. Civ. P. 56(c)(1)(A), (B)), or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

A movant may shift the burden to the non-movant by pointing out an absence of evidence on a dispositive issue, which then requires the non-movant to "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324–25 (internal quotations and citations omitted).  *See* Fed. R. Civ. P. 56(c)(1).  Nevertheless, courts must view the facts and inferences from the record in the light most favorable to the non-moving party.  *Dwyer v. Ethan Allen Retail, Inc.*, 528 F. Supp. 2d 1297, 1299 (S.D. Fla. 2007).

### III.    ANALYSIS

The Code of Federal Regulations governing Section 8 HCV programs provides that during the initial term of the lease, the owner may not raise the tenant's rent.  24 C.F.R. § 982.309 (a)(3); DBS RFA §I, ¶97; Joseph RFA §I, ¶97.  Moreover, the " owner may not demand or accept any rent payment from the tenant in excess of this maximum, and must immediately return any excess rent payment to the tenant."  24 C.F.R, § 982.451 (b)(ii); DBS RFA §I, ¶¶88; Joseph RFA §I, ¶¶88.  During the assisted tenancy, the rent to the owner may not exceed the reasonable rent as most recently determined or re-determined by the PHA.  *See* 24 C.F.R. §982.507; *see also* 42 U.S.C. § 1437f(o)(10)(A); DBS RFA §I, ¶91; Joseph RFA §I, ¶91.

### A.    *The FCA Claim*

In order to maintain a FCA claim in HCV cases involving landlords who demand or accept rent payments from tenants in excess of the maximum permitted under a HAP Contract, a plaintiff must demonstrate that: (1) Defendant made a false statement or fraudulent course of conduct; (2) with scienter or knowledge; (3) that was material, and (4) causing the government to pay out money or forfeit moneys due.  *See United States ex rel. Sutton v. Reynolds*, 564 F. Supp. 2d 1183, 1187 (D. Ore. 2007); s*ee also United States ex rel. Gatsiopoulos v. Kaplan Career Institute*, No.: 09-21720-CIV-Seitz, 2010 WL 5392668 at *3 (S.D. Fla. Dec. 22, 2010).

The United States argues that summary judgment should be awarded on its FCA claim because Defendants knowingly collected an excess of rent from Ms. Wade and made false statements that influenced the County's HCV Program's decision to make HAP payments to Defendants, which Defendant Joseph presented for payment and deposited on DBS Investment's behalf.

      *1.     False Statements or Fraudulent Course of Conduct*

Defendants' conduct was unmistakably fraudulent.  In *Sutton*, the Court found that any amount the defendant collected from the relator in excess of that specified in the HAP Contract qualified as fraud.  564 F. Supp. 2d at 1187.  Furthermore, a landlord's collection of extra or "side" payments in excess of the tenant's share of rent constitutes "fraud and abuse" under the HUD guidelines.  Ramirez-Mendoza Decl., ¶27; DBS RFA §I ¶ 93; Joseph RFA §I ¶ 93. Similarly to *Sutton*, Defendants entered into an alternative lease with Ms. Wade and began collecting money from her in excess of the amount approved by the HCV Program.  Wade Decl. ¶¶ 10-11.  This was a fraudulent course of conduct because it was not approved by, or known to, the HCV Program.  Moreover, a landlord commits fraud when that landlord endorses or presents for payment housing assistance payment checks while knowingly receiving additional payments in excess of that approved the PHA.  *United States ex rel. Stearns v. Lane*, No. 2:08-cv-175, 2010 WL 3702538, at *3 (D. Vt. Sept. 15, 2010).

In the case at bar, Defendants' actions were fraudulent because they certified that they would not charge more for rent than that permitted in the HAP Contract, yet demanded and collected a rent of $1,650 from Ms. Wade, instead of the approved $1,361.  *See* Landlord Responsibility Certification; HAP Contract; DBS RFA §I, ¶¶ 13, 14, 17-24, §II, ¶¶ 1, 3; Joseph RFA §I, ¶¶ 13, 14, 17-24, §II, ¶¶ 1, 3; Ramirez-Mendoza Decl., ¶¶5, 7 - 15; Wade Decl., ¶¶ 10-11.  These additional payments collected were done without the approval of the County's HCV Program.  Wade Decl., ¶¶ 10-11.  Further, Defendant Joseph presented for payment 19 federally subsidized HAP checks for deposit into Defendant DBS Investment's bank account whilst having accepted excessive rental payments from Ms. Wade.

2.      *Scienter or Knowledge*

Defendants had knowledge of their fraudulent conduct.  Defendants' actions need not be intentional and may be classified as either actual, deliberate ignorance, or reckless.  *See* 31 U.S.C. § 3729(b)(1).  It is evident that Defendants had knowledge because they executed an alternative lease without the knowledge or permission of the HCV Program, which charged Ms. Wade more than that permitted by the HCV Program, despite that Defendant Joseph initialed each paragraph of the Landlord Certification of Responsibility agreeing that he would not, because he could not without running afoul of the law.  Wade Decl., ¶¶ 10-11; DBS RFA §I, ¶¶ 13, 14, 17–19, 24, §II, ¶¶ 1, 3; Joseph RFA §I, ¶¶ 13, 14, 17–19, 24, §II, ¶¶ 1, 3; Ramirez Decl., ¶¶5, 7–15.  Also, with actual knowledge that he charged Ms. Wade excessive rent, and with knowledge of the affirmations that he made in the Landlord Responsibility Certification, Defendant Joseph deposited $19,733 of federally subsidized HAP checks into DBS Investment's bank account.

3.      *Material*

"Material," as defined in the False Claims Act, means "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."  31 U.S.C. § 3729(b)(4).  Defendants' actions were material because their agreement to abide by the HAP Contract and not collect excess rent greatly influenced the County's HCV Program's decision to make or continue the HAP subsidy payments to Defendants.  Ramirez-Mendoza Decl., ¶¶19-21, 26-30.  Because the HAP Contract, the Tenancy Addendum, and federal regulations explicitly state that HAP payments were conditioned upon Defendants not charging Ms. Wade additional rent beyond the contracted amount, the amount of rent to be collected and actually collected undoubtedly influenced the HCV Program's decision to enter into the HAP Contract with

Defendants and continue to abide by the contractual terms (by tendering HAP payments).  *See* Ramirez-Mendoza Decl., ¶¶19-21, 26-30 ("Had the County's HCV Program known that DBS, Joseph, or any of DBS's agents, affiliates, or associates was collecting more than the HAP Contract permitted from Ms. Wade, the County's HCV Program would have ceased making monthly payments to DBS.").

       *4.     Causing the Government to Pay Out Money or Forfeit Moneys Due*

Finally, the Defendants' fraudulent conduct caused the Government to pay out additional funds because the Defendants' agreement not to charge Ms. Wade more than the amount approved required that the Government pay Defendants the difference in the total amount owed. However, the payment was contingent upon Defendants remaining true to their agreement, which they did not.  Ramirez- Mendoza Decl., ¶¶ 19-21, 26-30; HAP Contract (ECF 18-3), Part A, ¶¶ 6, 7; HAP Contract, Part B, ¶¶1, 2, 6, 7, 8; HAP Contract, Part C - Tenancy Addendum, ¶¶2, 4, 5, 15 (ECF 18-4); 24 C.F.R. §§ 982.308 (g)(2), 982.451.  These facts remain undisputed, and are supported by the record.

Accordingly, there exist no genuine issues of material fact regarding the United States' FCA claim against Defendants DBS Investments and Joseph.

**B.     Payment by Mistake and Unjust Enrichment**

Under Florida law, the elements of a cause of action for unjust enrichment and payment by mistake are "(1) plaintiff conferred a benefit upon the defendant, who has knowledge of that benefit; (2) defendant accepts and retains the conferred benefit; and (3) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying for it."  *State Farm Mut. Auto. Ins. Co. v. Kugler*, No.: 11-8005120-Hurley, 2011 WL 4389915 at *3–*4 (S.D. Fla. September 21, 2011).  The elements for these claims unquestionably are met because Plaintiff

undoubtedly conferred a benefit upon Defendants by permitting them to participate in the HCV Program, and paying them consistent with their participation in the HCV Program.  Defendants had knowledge of the benefit, and accepted that benefit.  DBS RFA §I, ¶¶ 13, 14, 17–19, 24, §II, ¶¶ 1, 3; Joseph RFA §I, ¶¶ 13, 14, 17–19, 24, §II, ¶¶ 1, 3; Ramirez Decl., ¶¶5, 7–15.  Finally, because the benefit was maintained illegally, it is my finding that it would be inequitable for the Defendants to retain the benefit without paying for it.

## IV.    DAMAGES

Violators of the False Claims Act "is liable for a civil penalty of not less than $5,[5]00 and not more than $1[1],000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C 2461; Public Law 104-410[]), plus 3 times the amount of damages which the Government sustains because of the act of the person."  31 U.S.C. § 3729(a)(1)(G); *see also* 28 C.F.R. § 85.3(a)(9).  Each violation of the False Claims Act gives rise to separate liability.  *See Coleman v. Hernandez*, 490 F. Supp. 2d 278, 281 (D. Conn. 2007)("Liability attaches for each false claim he submitted.").

Courts that have addressed the issue of calculating the amount of damages sustained in an "improper demand of additional rent payments" False Claims Act case found that the "measure of the government's damages under he False Claims Act would be the amount that it paid out by reason of the false statements over and above what it would have paid if the claims had been truthful."  *Coleman*, 490 F. Supp. 2d at 281 (quoting *United States v. Mackby*, 339 F.3d 1013, 1018 (9th Cir. 2003)).  In the present case, the United States incurred damages in the amount of $4,398, which is the amount the HCV Program paid to Defendants over what it would have paid had Defendants not charged and collected additional rent from Ms. Wade.  Thus, the amount of

damages Defendants owe to is $13,194, which is the treble amount of the damages the Government incurred.

A violator of the False Claims Act is not liable for damages alone, but also a civil penalty of not less than $5,500 and not to exceed $11,000 for each violation.  As recounted *supra* Part I., Defendants made at least 23 material false statements or omissions to the County's HCV Program, and thus, violated the False Claims Act 23 times.  Rather than suffering penalties of $253,000 ($11,000 x 23), given the amount of damages at issue, Defendants shall be liable for $22,000 in penalties ($5,500 x 4) for: (1) failing to submit the alternative lease to the HCV Program for approval, (2) failing to obtain approval for the modification of the total rent, (3) failing to obtain approval to charge and collect rental payments from Ms. Wade above the amount of the HCV Program's determination of the tenant's share, and (4) making misrepresentations in the Landlord Responsibility Certification.

Accordingly, the United States shall be entitled to a total amount of $35,194 in damages and penalties against Defendants DBS Investments and Joseph, plus costs and interest under the False Claims Act.   Additionally, Ms. Wade shall recover $4,398 from Defendants, which represents the amount of funds Defendants illegally obtained from Ms. Wade in excessive rental payments.

## V.    CONCLUSION

For the foregoing reasons, IT IS **ORDERED and ADJUDGED** that Plaintiff's Motion for Summary Judgment is **GRANTED**.  All pending motions, if any, are **DENIED** as moot.  The Clerk of Court shall administratively **CLOSE** this case.

Counsel for the United States and Relator shall file their motions for attorneys fees and costs within fourteen (14) days of the date of this Order.  Pursuant to Federal Rule of Civil Procedure 58, a separate judgment will issue thereafter.

**DONE AND ORDERED** in chambers at Miami, Florida this 29th day of August 2012.

*Marcia G. Cooke*

MARCIA G. COOKE
United States District Judge

Copies furnished to:
*William C. Turnoff, U.S. Magistrate Judge*
*Counsel of record*